# Lebanon Mutual Insurance Company, Plff. in Err., *v.* Benjamin F. Leathers et al., Trading as B. F. Leathers & Son.

A mere temporary suspension of work by a manufacturing establishment, for the purpose of repairing, or from want of a supply of materials, is not a breach of a condition in a policy of fire insurance which requires that if the establishment "shall cease to be operated" without the indorsed consent of the insurance company the policy shall become void.

A mortgage executed within the term of a policy of fire insurance and before the renewal of the policy is not a breach of a condition in the renewed policy that if a mortgage be executed subsequent to the delivery of the policy, without the indorsed consent of the company, the policy shall be void.

Under the act of May 11, 1881, a copy of the application must be attached to the policy, in order to be admissible in evidence.

(Argued February —, 1887. Decided February 28, 1887.)

July Term, 1886, No. 95, E. D.    Error to the Common Pleas of Centre County to review a judgment on a verdict for the plaintiffs in an action of covenant.    Affirmed.

The facts as they appeared at the trial before FURST, P. J., were thus stated in his charge to the jury:

This is an action of covenant brought by B. F. Leathers & Son against the Lebanon Mutual Insurance Company, located at Jonestown in this state, upon a policy of insurance dated the 30th day of November, 1881, upon a certain tannery building, situated in the borough of Unionville, in this county, which policy was renewed on the 28th day of November, 1882, insuring this property to the extent of $1,000, for the further period of one year from the 30th of November, 1882.

The execution and delivery of the policy, the payment of the premium, and the payment of the renewal are not disputed in this case.    The fact that a fire occurred on the 12th or 13th of

NOTE.—For the effect of the act of 1881 upon the admissibility of the policy, where the application is not attached, see note to Manheim Mut. F. Ins. Co. v. Thompson, 1 Sad. Rep. 18. For the effect of the temporary suspension of business upon the right to recover, see note to Allemannia Fire Ins. Co. v. White, 8 Sad. Rep. 388.

See also Metropolitan Life Ins. Co. v. Jenkins, 4 Sad. Rep. 197.

November, 1882 (3), resulting in the total loss of the premises that were insured, is not disputed in this case; and the further fact that on or about the 3d of December, 1882 (3), due notice and proof of loss were furnished to the company, is not denied. Neither is it denied that the property insured was of a value exceeding the amount for which insurance was obtained in this case.

The company, however, makes defense to the payment of this policy on two grounds: The first ground is that subsequent to the issuing of the policy on the 30th of November, 1881, a mortgage had been executed and delivered by these plaintiffs to one Christian Buck, dated the 16th of February, 1882, to secure a real debt of $1,180, and that on the 3d of March, 1882, another mortgage had been executed to Massey & Janney to secure the payment of $5,000, which was claimed to be collateral, which latter mortgage was satisfied on the 3d of May, 1883, the first mortgage remaining unpaid to the present time. This constitutes one of the defenses in this case.

The second defense consists in the allegation on the part of the defendant that this property ceased to be operated as a tannery; and therefore under the conditions of the policy it, the policy, became null and void.

[With regard to the first defense, consisting of the execution and delivery of the mortgages upon this same property, we say to you that that defense does not avail in this case. Under the conditions in this policy, provision is made that if a mortgage be executed subsequent to the delivery of the policy without the consent of the company indorsed upon the policy, it thereby becomes void. If, therefore, the mortgages had been executed subsequent to the renewal of the policy on the 28th of November, 1882, that defense would avail the defendant in this case; but you will notice that both these mortgages were executed prior to the 28th of November, 1882, and that on that date the policy which had originally been issued on the 31st of November, 1881, was renewed. There is no clause in this policy that voids it by virtue of pre-existing liens; and from the fact that these mortgages were given prior to the renewal of the policy we say this defense fails in this case.]

[The second defense raises, however, a different question, involving a question of fact which we must submit to you under the evidence.]

Under one of the provisions of this policy it is provided as follows: "If the property insured be a manufacturing establishment or mill, running in whole or in part over an extra time, or running at night, or if the same shall cease to be operated without the consent of the company indorsed thereon, this policy shall cease and determine."

[The defendant alleges as a defense to this policy that this property ceased to be operated as a tannery some three, four, or five months prior to the destruction of it by fire; and therefore this policy is null and void.] If it ceased to be operated as a tannery then under that condition the policy would be void.

[The important words in this condition are "cease to be operated without the consent of the company indorsed thereon." Now, what is the true construction of that phrase? The supreme court has laid down a very plain ruling upon that question; and that is, that such a clause or a similar clause must receive a reasonable construction. A tannery is to be used for the manufacture of leather; it consists of various parts of buildings, of machinery, of vats, of liquor for the vats, and of bark; and the whole thing constitutes a tanning establishment. To operate it means to run it, to maintain it, to work and to keep it for that purpose. It may often happen that, by accident or for the purpose of repairs, it may cease temporarily to be used in the actual tanning of hides; and yet it remains a tannery, and it is kept, used, and operated as a tannery.]

Applying, therefore, that construction to this policy, the simple question of fact for you to determine in this case, under the evidence, is [Did these plaintiffs cease to operate this establishment as a tannery? If they ceased to operate it, then clearly there can be no recovery in this case. If, however, they did operate it and continued to operate it as a tannery, then the plaintiffs are to receive the amount of the loss sustained in this case.]

[A mere temporary suspension, as it is alleged in this case, for want of hides, while the vats are full of liquor and the parties were procuring bark to run the tannery, with the intention to keep and maintain it as a tanning establishment is not a ceasing to operate, within the meaning of this condition of the policy, which would avoid it; in that sense it does not cease to be operated as a tannery.]

If, however, from all the evidence in the case, you find that

these plaintiffs, under the instructions we have given you, ceased to operate it as a tannery, then your verdict should be for the defendant. If you find from the evidence that they did not cease to operate it as a tannery, your verdict should be for the plaintiffs for the amount of the loss sustained, which it is not denied is $994.68, with interest for three months or ninety days, from the time of the receipt of the notice of loss, which would be about the 1st of March, 1883.

The defendants submitted, *inter alia,* the following points:

3. That one of the conditions of the policy being that if the assured "shall sell or transfer the property herein insured, or mortgage the same without notice to this company indorsed hereon . . . then in every such case this policy shall be null and void;" and the proof is uncontradicted and undisputed that subsequent to the date of said policy, to wit, on the 16th day of February, 1882, plaintiffs mortgaged the property insured to Christian Buck for the sum of $1,180, and that notice thereof was not indorsed on the policy, and no notice of such mortgaging given to the company defendant, and the mortgage being unpaid at the time of the fire, the plaintiffs are not entitled to recover and their verdict must be for the defendant.

*Ans.* "This would be so where the mortgage is given after the execution of the policy; but in this case, where it has been shown that the policy was renewed on the 28th of November, 1882, it is not. If the mortgage had been given subsequent to the 28th of November, 1882, then the giving of the mortgage would clearly avoid the policy, and your verdict should be for the defendant; but the evidence shows, clearly and beyond contradiction, that the mortgages were given prior to the renewal of this policy; and we therefore decline to affirm this point."

4. That if the jury find from the evidence that the assured mortgaged the property covered by the policy after the policy was in force and before the fire, without notifying the insurance company and having the same indorsed on the policy, the plaintiffs cannot recover in this action and the jury must find for the defendant.

*Ans.* "This point is substantially the same as the third point, and our answer covers it."

5. That a condition of the policy being that if the property insured be a manufacturing establishment, or mill running in

whole or in part over or extra time, or running at night, or if the same shall cease to be operated without consent of the company indorsed hereon, "this policy shall cease and determine," and the undisputed evidence in this cause being that the tannery had ceased to be operated for five months and upwards before the fire, and was not operated or in any way occupied at the time of the fire, the plaintiffs cannot recover in this action, and the verdict must be for the defendant.

*Ans.* "The principle stated in this point is correct, but it assumes facts which we have submitted to you for your determination. If you find that the plaintiffs ceased to operate this establishment as a tannery, under the instructions we have given you, then your verdict should be for the defendant. If, however, you find the fact that they did not cease so to operate it, then your verdict should be for the plaintiffs."

6. That a tannery is a manufacturing establishment embraced within the above-quoted condition, and that if the jury find from the evidence that the same ceased to be operated as a tannery subsequent to the time when the policy went into effect, and was not again started and operated as a tannery, and the consent of the company was not obtained and indorsed on the policy, the plaintiffs cannot recover, and the verdict must be for the defendant.

*Ans.* "We have answered this point in our answer to the fifth, and it is not necessary to repeat."

7. That, under all the evidence in this cause, the plaintiffs are not entitled to recover, and the verdict must be for the defendant.

*Ans.* "This point we refuse."

The assignments of error specified the portions of the charge inclosed in brackets and the answers to the points quoted.

*Adam Hoy,* for plaintiff in error.—By the term "occupied" in a policy is meant a substantial use for the purposes contemplated in the policy.   Wood, Fire Ins. § 81, p. 164.

Where the policy provides that "if the premises shall be vacated in whole or in part, the policy shall be void," the condition is binding upon the assured; and if they are left vacant within the time, for any time, and are burned while so vacated, no recovery can be had upon the policy.   Id. p. 182.

A practical occupancy, consistent with the purposes or uses for which the premises were insured, is intended; and an occupancy that reasonably lessens the vigilance and care that would

be incident to its use for such purposes is not an occupancy within the meaning of the terms as thus employed. The intent of the parties in respect to occupancy is to be gathered from the usual and ordinary use of the premises for the purposes to which they are devoted. Id. p. 181; Keith v. Quincy Mut. F. Ins. Co. 10 Allen, 228.

*Orris, Bower, & Orris,* for defendants in error.—If there is any obscurity in the meaning of the policy, it is the fault of the company in not giving it clear expression; and as between the parties it must be construed most strongly against the company. Grandin v. Rochester German Ins. Co. 15 W. N. C. 1.

The insurer cannot be released from his liability by reason of any arbitrary provisions of forfeiture having no application to the situation or condition of the property insured. Lebanon Mut. Ins. Co. v. Erb, 112 Pa. 149, 2 Cent. Rep. 783, 4 Atl. 8.

The question whether this suspension of tanning was only temporary was for the jury, and they found that it was temporary.

PER CURIAM:

A mere temporary suspension of the business of the establishment for the purpose of repairing, or from want of a supply of materials, is clearly not ceasing to operate the establishment within the meaning of the policy. No mortgage on the property insured is shown to have been executed contrary to the provisions of the renewed policy on which the claim for this loss is made. It does not appear that a copy of the application was attached to the policy so as to make it admissible in evidence under § 1 of the act of May 11, 1881. Purdon's Digest, 924, pl. 108.

Judgment affirmed.